**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THIRD DEGREE FILMS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 11-1833 (BAH) |
| | Judge Beryl A. Howell |
| DOES 1-152, | |
| Defendants. | |

## <u>ORDER</u>

Before the Court are two submissions by anonymous individuals, who claim to be putative defendants in this case and seek to file motions to quash subpoenas the plaintiff issued to their Internet Service Providers ("ISPs").  For the reasons set forth below, leave to file these submissions on the docket of this case is denied.[1]

Plaintiff has filed this copyright infringement action alleging that the defendants, who are denominated as Does 1-152, have illegally copied and distributed Plaintiff's motion picture, *All About Kagney Linn Karter*, through the use of "torrent technology."  Compl. ¶¶ 4-6, ECF No. 1. Torrent technology is a peer-to-peer software protocol that enables users to download pieces of data directly from other users' computers.[2]  *Id.* at ¶ 7.  The software then organizes the data into a complete and cohesive media file that can be viewed on a requester's computer.  *Id.*  These downloads are accomplished through a decentralized network of individual computers and generally without the aid of an intermediary server.  *Id.*  According to the plaintiff, due to the

---

[1] One submission to the Court purports to be from the putative defendant designated as "Doe 5" in Exhibit A to the Complaint (IP Address: 76.106.18.94).  The other submission is entirely anonymous.

[2] Plaintiff argues that because data is typically transferred both to and from torrent users, "every downloader is also an uploader of the illegally transferred file."  Compl., ¶ 7.

manner in which the torrent technology works, every infringer "is simultaneously taking copyrighted material from many ISPs in numerous jurisdictions around the country." *Id.*

Plaintiff has identified the Internet Protocol ("IP") addresses of the computers offering for upload the plaintiff's motion picture, together with the date and time at which the alleged infringement activity was observed.  Compl., ECF No.1, Ex. A.  On October 21, 2011, the Court issued an order permitting the Plaintiff to subpoena six ISPs ("Providers") that service the identified IP addresses to discover "limited information sufficient to identify only the putative Defendants listed in Exhibit A to the Complaint," including their "name, current and permanent address, telephone number, e-mail address, and Media Access Control (MAC) Address."  Order Granting the Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conf., ECF No. 6.  Since that Order was issued, two anonymous persons, who claim to be the Providers' customers and putative defendants, have attempted to file motions in this case to quash subpoenas issued to the Providers.

Both the Federal Rules of Civil Procedure and Local Civil Rules require that persons filing papers in Federal court identify themselves by name and provide contact information. Rule 11(a) of the Federal Rules of Civil Procedure states, in pertinent part, that "[e]very . . . written motion, and other paper must be signed . . . by a party personally if the party is unrepresented.  The paper must state the signer's address, e-mail address, and telephone number . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention."  FED. R. CIV. P. 11(a).  Likewise, Local Civil Rule 5.1(e)(1) provides that "[t]he first filing by or on behalf of a party shall have in the caption the name and full residence address of the party."  LCvR 5.1(e)(1).

Parties are required to identify themselves to "protect[] the public's legitimate interest in knowing all of the facts involved [in a case], including the identities of the parties." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (citation omitted).  As one court explained:

> [I]t is the responsibility of judges to avoid secrecy . . . and the concealment of the judicial process from public view.  Courts are public institutions which exist for the public to serve the public interest.

*See Doe v. Fed. Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003); *see also Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068-69 (9th Cir. 2000) (parties may "use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment.") (internal quotations omitted).

In addition to the public interest in transparency concerning the lawsuits pending before the Federal courts, identification of the parties participating in these proceedings is necessary to protect the integrity of the process itself by enabling the presiding judge to determine whether recusal may be necessary.  *Liteky v. United States,* 510 U.S. 540, 548 (1994); *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 860 (1988).  A judicial officer is required to recuse (1) in any proceeding in which the officer's "impartiality might reasonably be questioned;" or (2) if any of the statutorily enumerated conflicts of interest exist.  *See* 28 U.S.C. § 455(a) (2010) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *id*. at § 455(b) (circumstances requiring recusal); 28 U.S.C. § 144 (2010); CODE OF JUDICIAL CONDUCT FOR UNITED STATES JUDGES Canon C3(c)(1), reprinted in 69 F.R.D. 273, 277.  Review of the identities of the parties

is essential for Courts to be able to make a determination whether the statutory and related

ethical requirements for recusal are applicable.[3]

At the same time, the Supreme Court has made clear that First Amendment protection

extends to some anonymous speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42

(1995) ("The freedom to publish anonymously extends beyond the literary realm."). This First

Amendment protection encompasses anonymous speech on the Internet. *Reno v. ACLU*, 521

U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of First Amendment scrutiny

that should be applied to [the internet]"); *accord Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128,

131 (D.D.C. 2009) ("Such rights to speak anonymously apply . . . to speech on the Internet.").

Anonymity may be "motivated by fear of economic or official retaliation, by concern over social

ostracism, or merely by a desire to preserve as much of one's privacy as possible." *McIntyre,* 514

U.S. at 341-42. Nevertheless, First Amendment rights are not absolute and, indeed, certain

classes of speech, such as defamatory and libelous utterances, are entitled to no Constitutional

protection at all. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *Beauharnais v.*

*Illinois*, 343 U.S. 250, 266 (1952).

In this case, the First Amendment speech rights of the Providers' customers are

implicated in two inter-related ways: first, in their effort to speak to the Court by submitting

anonymous papers to quash plaintiff's subpoenas to the Providers; and, second, their interest in

limiting plaintiff's (and public) knowledge of the online content they allegedly chose to upload

or download, albeit allegedly illegally. *London-Sire Records Inc. v. Doe 1*, 542 F. Supp. 2d 153,

163 (D. Mass. 2008) ("[T]here are some creative aspects of downloading music or making it

---

[3] To protect the integrity of the process, the Federal Rules of Civil Procedure and the local rules of this Court require that corporate parties provide even more information than individuals, including the names of any parent corporation and any publicly held corporation owning 10% or more of its stock. FED. R. CIV. P. 7.1; LCvR 7.1.

available to others to copy: the value judgment of what is worthy of being copied; the association

of one recording with another by placing them together in the same library; the self-expressive

act of identification with a particular recording; the affirmation of joining others listening to the

same recording or expressing the same idea . . . . [W]hile the aspect of a file-sharer's act that is

infringing is not entitled to First Amendment protection, other aspects of it are.").  In evaluating

the extent of these First Amendment interests to participate anonymously in this case, the Court

must be mindful of the countervailing strong public interest in the transparency and integrity of

judicial proceedings effectuated through the requirement of full identification of parties and other

participants in the case.

  Courts in this jurisdiction have balanced the competing interests posed by anonymous

participation in a judicial case against the general presumption that parties' identities are public

information and the risk of unfairness to the opposing party through consideration of the

following factors: (1) whether the justification asserted by the requesting party is merely to avoid

the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of

sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory

physical or mental harm to the requesting party or to innocent non-parties; (3) the ages of the

persons whose privacy interests are sought to be protected; (4) whether the action is against a

governmental or private party; and (5) the risk of unfairness to the opposing party from allowing

an action against it to proceed anonymously.[4]  *See Achte/ Neunte Boll Kino Beteiligungs GMBH*

*& Co. KG v. Does 1-4,577*, No. 10-cv-453, Order dated Sept. 16, 2010, ECF No. 91 (Collyer, J.);

---

[4] The issue decided here whether the Providers' customers are exempt from the applicable Federal and local civil procedure rules on identification of parties participating in litigation before the Court and may file motions anonymously is separate from the question whether these customers have a First Amendment right to anonymity that warrants quashing of the subpoenas to the Providers. Other factors are considered to determine whether the First Amendment shields an anonymous putative defendant's identity from disclosure in the context of deciding a motion to quash a subpoena under Fed. R. Civ. P. 45.  *See Sony Music Ent. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004); *Virgin Records Am., Inc. v. Doe*, 2009 U.S. Dist. LEXIS 21701 (E.D. N.C. Mar. 16, 2009).

*John Doe #1 v. Von Eschenbach*, No. 06-cv-2131, 2007 U.S. Dist. LEXIS 46310, at *5 (D.D.C.

June 27, 2007) (citing *Yacovelli v Moeser*, No. 02-cv-596, 2004 U.S. Dist LEXIS 9152, at *19-

20 (M.D. N.C. May 20, 2004); *James v. Jacobso*n, 6 F.3d 233, 238 (4th Cir. 1993)).

 The first factor is the most significant in this case.  Courts have permitted parties to

remain anonymous "where the issues are 'matters of a sensitive and highly personal nature such

as birth control, abortion, homosexuality or the welfare rights of illegitimate children or

abandoned families.'"  *Von Eschenbach*, 2007 U.S. Dist. LEXIS 46310, at *4 (quoting *Southern*

*Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir.

1979)); s*ee also James*, 6 F.3d at 238 (anonymity request improperly denied in malpractice suit

against a doctor who, when providing artificial insemination, used his own sperm instead of

spouse of plaintiff); *Doe v. United Servs. Life Ins. Co*., 123 F.R.D. 437 (S.D.N.Y. 1988)

(allowing plaintiff to sue insurance company anonymously to protect against identification as a

homosexual); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) (permitting plaintiff in

abortion suit to use pseudonym due to the personal nature of pregnancy).  This matter simply

does not fall into this narrow class of cases.

 On the contrary, the Providers' customers, who are seeking to file motions to quash

plaintiff's subpoena, are doing so anonymously to avoid being effectively targeted for their

allegedly infringing downloads of plaintiff's copyrighted movie.  The use of anonymity as a

shield from copyright liability is not a motivation that warrants the protection from the Court.

To the extent the putative defendants have First Amendment interests at stake, those interests are

small.  The First Amendment does not protect copyright infringement.  *Harper & Row*

*Publishers, Inc., v. Nat'l Enters*., 471 U.S. 539, 560 (1985); *see also Arista Records LLC v. Does*

*1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("First Amendment privacy interests are exceedingly

small where the 'speech' is the alleged infringement of copyrights.").  Any First Amendment

right of the Providers' customers to remain anonymous, therefore, "must give way to the

plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright

infringement claims." *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y.

2004).

Moreover, as more than one judge on this Court has recently found, "[i]nternet

subscribers do not have an expectation of privacy in their [identifying information] as they have

already conveyed such information to their Internet Service Providers." *Achte/ Neunte Boll Kino

Beteiligungs GMBH & Co. KG v. Does 1-4,577*, 736 F. Supp. 2d 212, 216 (D.D.C. 2010); *see

also Donkeyball Movie LLC v. Does 1-171*, No. 10-cv-1520, Order dated Jan. 14, 2011, ECF No.

18 (Sullivan, J.); *Maverick Entm't Grp., Inc. v. Does 1-4,350*, No. 10-cv-569, Order dated Dec.

1, 2010, ECF No. 17 (Leon, J.).

Second, rather than risking retaliatory action, timely identification of the putative

defendants would enable the copyright owner, the putative defendants and this Court to resolve

the merits of the plaintiff's claim of copyright infringement.  Avoiding potential liability for

copyright infringement does not qualify as a risk of retaliation that would weigh in favor of

permitting a party to proceed anonymously.  *See Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C.

2005) (vague, unsubstantiated fears of retaliatory actions do not permit a plaintiff to proceed

under a pseudonym); *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir. 1981) (permitting students

challenging the constitutionality of prayer and Bible readings at their school to remain

anonymous to protect them from "extensive harassment and even violent reprisals . . . ."); *Gomez

v. Buckeye Sugars*, 60 F.R.D. 106, 107 (N.D. Ohio 1973) (permitting FLSA plaintiffs to use

pseudonyms to protect them from employer reprisals).

Third, the ages of the Providers' customers who have sought or will seek anonymous participation in this case are unknown, and therefore this factor is currently irrelevant.

Fourth, this case does not involve a challenge to governmental action that may, in some circumstances, prompt public censure and persuade a court to permit a party to proceed under a pseudonym. *Yacovelli*, 2004 U.S. Dist LEXIS 9152, at *24-25.

Finally, the risk of unfairness to the plaintiff from allowing the Providers' customers to proceed anonymously is real. "As a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 775 n.3 (8th Cir. 2005).[5] By filing this lawsuit against unknown putative defendants and using the subpoena power to learn the identity of Internet service customers who infringe, copyright owners are able to take steps to protect their interests, seek compensation for their misappropriated property, and stop infringement. The Court recognizes that disallowing anonymous participation by the putative defendants to contest the issuance of subpoenas to the Providers presents a "catch-22" situation: those customers wishing to be heard would have to reveal their identities before the merits of the motion to quash are reached, defeating the very purpose of their motion to maintain their anonymity. *See West Bay One, Inc. v. Does 1-1,653*, 270 F.R.D. 13, 15 (D.D.C. 2010) ("[B]y filing the motions to quash on the public record of the Court, [the movant] provided the most critical information sought by the subpoenas-his name and address. His motion to quash

---

[5] The Court of Appeals for the Eighth Circuit reversed the lower court's allowance of a subpoena issued under the section 512(h) of the Digital Millennium Copyright Act (DMCA) to a cable operator that provided conduit service used by its subscribers to download copyrighted material over peer-to-peer networks, finding that such subpoena authority only applied when the ISP stored the infringing material on its network (rather than on the customer's computer). *Accord Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003). The Eighth Circuit acknowledged that without this DMCA subpoena tool to discover the identity of the alleged infringer, "organizations . . . can also employ alternative avenues to seek this information, such as 'John Doe' lawsuits. In such lawsuits, many of which are now pending in district courts across the country, organizations . . . can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d at 775 n.3.

could be deemed moot, at least with regard to this information.").  As noted, however, identification of the parties also serves other judicial and public interests in the integrity and fairness of the proceedings.  Moreover, procedural mechanisms are available under the Federal Rules of Civil Procedure to protect public disclosure of defendants' identities.[6]  Accordingly, at this stage of the proceedings, the Providers' customers who wish to contest the subpoenas to the Providers must reveal their identities at least to the Court, pending a decision on the merits of their motions, which may ultimately require disclosure of their identities to plaintiff.

For these reasons, the desire of Providers' customers who are putative defendants to submit motions and proceed anonymously in this case does not override the public's interest in identifying the parties, in accordance with the Federal Rules of Civil Procedure and Local Civil Rules, to ensure that judicial proceedings are open and fair.

Accordingly, it is hereby

**ORDERED** that any motion in this matter sent to the Court that does not provide the name, address and telephone number of the person submitting the motion, as required by Rule 11(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(e), shall not be docketed by the Clerk of the Court; and it is further

**ORDERED** that any person who has attempted to file a motion in this matter without providing his/her name, address and telephone number, as required by Rule 11(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(e), may promptly correct and re-file the motion in order for the motion to be considered by the Court; and it is further

---

[6] *See* FED. R. CIV. P. 26(c)(1) (The Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."); LCvR 5.1(j).

**ORDERED** that the Clerk of the Court is directed to return to the sender, if feasible, with

a copy of this Order, any motion in this matter sent to the Court that does not provide the name,

address and telephone number of the person submitting the motion.

**SO ORDERED.**

**DATED:  DECEMBER 8, 2011**

*Beryl A. Howell*
————————————————
BERYL A. HOWELL
United States District Judge